UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KYLER NORTHRUP,<br><br>Plaintiff,<br><br>v.<br><br>INDIANA DEPT. OF CORRECTION, et al.,<br><br>Defendants. | CAUSE NO. 3:21-CV-458-RLM-MGG |

OPINION AND ORDER

Kyler Northrup, a prisoner proceeding without a lawyer, filed a complaint under 42 U.S.C. § 1983 and a motion for a preliminary injunction. (ECF 2, 6.) A court must screen the complaint to determine whether it states a claim for relief. 28 U.S.C. § 1915A. To proceed beyond the pleading stage, a complaint must contain enough factual matter to "state a claim that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The court must bear in mind that "[a] document filed pro se is to be liberally construed." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotation marks and citation omitted).

Mr. Northrup, an inmate at Westville Correctional Center, filed a detailed, 35-page handwritten complaint against 15 defendants. According to the complaint, he suffered a traumatic brain injury in 2017 before his incarceration, as a result of which he has seizures and takes seizure medication. He arrived at Westville in January 2020. He claims that on November 29, 2020, he suffered a seizure and fell, breaking

his right shoulder. He alleges that Nurse Josh Kuiper and Nurse Brandon T. Siminski provided emergency care after the injury, but mistakenly thought his shoulder was dislocated rather than broken. They twice attempted to "set" his shoulder, causing him extreme pain and exacerbating his injury. Later that night x-rays revealed that he had a fracture rather than a dislocation.

Mr. Northrup was transferred to the infirmary that evening. Nurse Deal (first name unknown) was working in the infirmary that night, as was an inmate "hospice worker."[1] Mr. Northrup claims that in the early morning hours, he felt that he was going to have a seizure, and he called out to the nurse and the inmate worker multiple times. He could hear someone watching television, which he thinks drowned out his voice. No one responded. He tried to walk to the enclosed nurses' station and suffered a seizure, fell, and reinjured his broken shoulder. He claims that the lack of training and oversight of nurses and inmate hospice workers results in them often watching television, falling asleep, or otherwise being out of earshot of inmates housed in the infirmary who might need assistance during overnight hours.

Dr. James Jackson released Mr. Northrup from the infirmary the next day. Mr. Northrup claims Dr. Jackson didn't examine him before discharging him, and only gave him prescription pain medication for a few days, even though his pain was significant. He believes that the infirmary Charge Nurse, Iva Nerada, didn't adequately convey to Dr. Jackson the risks of releasing him from the infirmary in

---

[1] It can be discerned that these are inmates who work in the infirmary providing assistance to medical staff.

light of his ongoing seizures. A second x-ray on December 2, 2020 showed a larger fracture of his shoulder, consistent with him having had a second fall.

Mr. Northrup suffered another seizure while in general population on December 11, 2020 and was taken to the medical unit. He claims that he still hadn't seen an orthopedic doctor by then, even though Dr. Andrew Liaw put in an "urgent" request for an orthopedic consultation on November 29, 2020. He believes Dr. Liaw didn't do enough to ensure that the consultation took place promptly.

Mr. Northrup must have ultimately seen an orthopedic specialist because he underwent surgery for his shoulder at an outside medical facility on December 16, 2020. He was sent back to the prison infirmary after his surgery. He says he was only given a 7-10 day supply of pain medication. Mr. Northrup was still in significant pain when it ran out, but Nurse Nerada told him that the doctor "said no to your request for pain medication." He made additional requests directly to Dr. Liaw and Dr. Jackson for prescription pain medication, but without results. Mr. Northrup claims that he suffered four more seizures during his stay in the infirmary. No nurses or inmate hospice workers were around to help him during two of the seizures, resulting in him falling and hitting the ground. He claims Nurse Nerada was aware of his injuries suffered as a result of the fall, but did nothing to assess whether he had reinjured his shoulder or to convey to the doctor what had occurred.

Mr. Northrup was released from the infirmary in January 2021. He claims to have told Dr. Jackson and Dr. Liaw that he is still experiencing constant shoulder pain since his release, and that the over-the-counter pain medications available at the prison commissary are not effective in relieving his pain. He claims that they

have refused to provide him with anything stronger to address his pain despite his repeated complaints. Based on the alleged lack of proper medical care, he sues a host of medical staff at Westville, the Indiana Department of Correction, several high-ranking IDOC officials, Wexford Health Sources, Inc., and others, seeking monetary damages and injunctive relief.

Mr. Northrup's complaint also contains allegations about alleged disability discrimination. He claims that because of the problems with his shoulder, he has difficulty writing and so can't access certain programs and services at the prison. In connection with these allegations, he seeks damages and various forms of injunctive relief.

Inmates are entitled to adequate medical care under the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim, a prisoner must allege (1) he had an objectively seriously medical need and (2) the defendant acted with deliberate indifference to that medical need. *Id*. A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). On the second prong, inmates are "not entitled to demand specific care," Walker v. Wexford Health Sources, Inc., 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." Forbes v. Edgar, 112 F.3d at 267. Courts generally "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those

4

circumstances." Walker v. Wexford Health, 940 F.3d at 965 (citation and internal quotation marks omitted).

A prisoner isn't required to show that he was "literally ignored" to establish deliberate indifference. Berry v. Peterman, 604 F.3d 435, 441 (7th Cir. 2010). "[I]nexplicable delay in responding to an inmate's serious medical condition can reflect deliberate indifference," particularly where "that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering." Goodloe v. Sood, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and internal quotation marks omitted). Additionally, a "prison physician cannot simply continue with a course of treatment that he knows is ineffective in treating the inmate's condition." Arnett v. Webster, 658 F.3d 742, 754 (7th Cir. 2011). Thus, "a doctor's choice of the easier and less efficacious treatment for an objectively serious medical condition" can amount to deliberate indifference. Berry v. Peterman, 604 F.3d at 441.

Giving Mr. Northrup the inferences to which he is entitled at this stage, he has alleged a plausible Eighth Amendment claim against Nurse Kuiper, Nurse Siminski, Dr. Liaw, Dr. Jackson, Nurse Nerada, and Nurse Deal. He alleges that Nurse Kuiper and Nurse Siminski used significant force to "set" his shoulder after his initial injury, without knowing whether it was actually dislocated. Testing later showed that his shoulder wasn't dislocated, and he believes their actions made his injury worse in addition to causing him significant pain. He further claims Dr. Liaw and Dr. Jackson have ignored his complaints of ongoing pain since January 2021, and that Dr. Liaw caused the initial delay in seeing an outside orthopedist. He alleges that Nurse Nerada failed to assess his shoulder injury after he fell in December 2020, and failed

5

to properly advise the doctor about what had occurred. He alleges that Nurse Deal failed to properly monitor him when he was in the infirmary in November 2020, resulting in him falling and exacerbating his shoulder injury. Further factual development might show that the defendants acted reasonably under the circumstances, but Mr. Northrup is entitled to proceed past the pleading stage against these defendants on a claim for damages under the Eighth Amendment.

Mr. Northrup's complaint also seeks injunctive relief related to his ongoing need for medical care for his shoulder, and Warden John Galipeau has both the authority and the responsibility to ensure that inmates at his facility are provided constitutionally adequate medical treatment as required by the Eighth Amendment. *See* Gonzalez v. Feinerman, 663 F.3d 311, 315 (7th Cir. 2011). Therefore, Mr. Northrup will be allowed to proceed on an Eighth Amendment claim against the warden in his official capacity for injunctive relief related to his ongoing need for medical care for his shoulder.

Mr. Northrup also asserts a claim against Wexford of Indiana, LLC and its parent company Wexford Health Sources, Inc., which employs medical staff at Westville. A private company may be held liable for constitutional violations when it performs a state function. *See* Hildreth v. Butler, 960 F.3d 420, 422 (7th Cir. 2020). There is no general supervisory liability under section 1983, so Wexford can't be held liable just because it employs the medical staff involved in Mr. Northrup's care. J.K.J. v. Polk Cty., 960 F.3d 367, 377 (7th Cir. 2020).

A private company performing a state function can be held liable to the same extent as a state actor under Monell v. Dep't of Soc. Servs. of City of New York, 436

6

U.S. 658 (1978). *See* <u>Rice v. Corr. Med. Servs.</u>, 675 F.3d 650, 675 (7th Cir. 2012). *Monell* requires "a plaintiff suing a municipality or comparable entity to demonstrate that the entity's official policy . . . was the 'moving force' behind his constitutional injury." <u>Dixon v. Cty. of Cook</u>, 819 F.3d 343, 348 (7th Cir. 2016); *see also* <u>Glisson v. Indiana Dep't of Corr.</u>, 849 F.3d 372, 381 (7th Cir. 2017). *Monell* claims can be based on the failure to train, but such claims are difficult to prove, as they are subject to "rigorous fault and causation requirements." <u>Ruiz-Cortez v. City of Chicago</u>, 931 F.3d 592, 599 (7th Cir. 2019) (citation and internal quotation marks omitted). A failure-to-train claim is actionable only if the failure amounted to "deliberate indifference to the rights of others." <u>Miranda v. Cty. of Lake</u>, 900 F.3d 335, 345 (7th Cir. 2018). Deliberate indifference exists if the defendant (1) failed "to provide adequate training in light of foreseeable consequences"; or (2) failed "to act in response to repeated complaints of constitutional violations by its officers." *Id.* (citations omitted).

Mr. Northrup alleges that Wexford has a policy or custom of failing to train and monitor infirmary nurses and inmate workers to ensure that they remain "within the sight and sound of every inmate patient." He claims that inmate workers often fall asleep or watch television during the overnight shift and do not attend to the needs of inmates staying in the infirmary. He further alleges that nurses are permitted to spend most of their shifts inside an enclosed nurses' station and thus cannot hear or see inmates who might need help. Mr. Northrup claims this policy or custom caused him to fall and injure himself multiple times, and that there have been similar incidents involving other inmates. He alleges that he and others have complained about the unavailability of staff in the infirmary numerous times but the

7

issue has not be addressed. Giving him the inferences to which he is entitled, he has alleged enough to proceed past the pleading stage against Wexford.

Mr. Northrup also names the Indiana Department of Correction a defendant, but this state agency has Eleventh Amendment immunity in federal court. de Lima Silva v. Dep't of Corr., 917 F.3d 546, 565 (7th Cir. 2019). He sues a number of high-ranking officials, specifically: Department of Correction Commissioner Robert Carter, Deputy Warden Kenneth Watts, Director of Nursing Michelle Rebac, and Health Services Administrator Dorothy Livers. Liability under 42 U.S.C. § 1983 is based on personal responsibility, and these defendants cannot be held liable solely because they supervise other prison staff or oversee operations within the prison. Mitchell v. Kallas, 895 F.3d 492, 498 (7th Cir. 2018); Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir. 2009). The complaint provides no indication that these people were personally involved in Mr. Northrup's medical care, or that they otherwise personally caused his injuries. He won't be allowed to proceed against these defendants.[2]

Mr. Northrup sues Lieutenant Risner (first name unknown), whose involvement was limited to calling for medical assistance when Mr. Northrup had a seizure in early December 2020. He believes that Lieutenant Risner should have tried to "stabilize" him or provide other medical care while waiting for medical staff to

---

[2] To the extent Mr. Northrup might be trying to assert a Monell claim against any of these pep[;e in their official capacities, he has already been granted leave to proceed on a Monell claim against Wexford based on its alleged policy or custom of failing to adequately train and supervise nurses and inmate infirmary workers. It's redundant for him to proceed on official capacity claims against more than one defendant based on the same policy or custom. See Hafer v. Melo, 502 U.S. 21, 25 (1991); Budd v. Motley, 711 F.3d 840, 844 (7th Cir. 2013). Additionally, there's no basis in the complaint to plausibly infer that any of the high-ranking Department of Correction officials held responsibility for training and monitoring nurses and other staff working in the Westville infirmary. They were entitled to delegate such tasks to medical providers at the prison. Burks v. Raemisch, 555 F.3d at 594.

8

arrive. As non-medical staff, Lieutenant Risner was entitled to defer to medical professionals regarding the appropriate treatment for Mr. Northrup's injuries. Burks v. Raemisch, 555 F.3d at 594. Moving Mr. Northrup or providing other care beyond Lieutenant Risner's training might have further exacerbated Mr. Northrup's injuries. Lieutenant Northrup cannot be held liable for any alleged failings by the medical staff. *Id*. The complaint doesn't plausibly allege deliberate indifference by Lieutenant Risner.

The complaint asserts claims against the defendants under the Indiana Constitution, but "no Indiana court has explicitly recognized a private right of action for monetary damages under the Indiana Constitution." Watts v. Reynolds, No. 2:19-CV-25-TLS-JEM, 2019 WL 5294525, at *6 (N.D. Ind. Oct. 17, 2019) (*quoting* Smith v. Ind. Dep't of Corr., 871 N.E.2d 975, 985 (Ind. Ct. App. 2007)). The complaint asserts claims against the defendants for "negligence" under Indiana law. To the extent Mr. Northrup is trying to assert a medical malpractice claim against any defendant, there is no indication that he presented a proposed complaint to the medical review panel and obtained an opinion from the panel before filing this action. *See* IND. CODE § 34-18-8-4; Terry v. Community Health Network, 17 N.E.3d 389, 393 (Ind. Ct. App. 2014).

Of the non-medical defendants, only Lieutenant Risner is alleged to have had any personal involvement in these events, and it doesn't appear Mr. Northrup complied with the notice requirement contained in the Indiana Tort Claims Act as to this defendant.[3] IND. CODE § 34–13–3–6. Even if he did, that Act shields government

---

[3] Mr. Northrup references having filed a notice of tort claim, but only mentions the Wexford defendants. (ECF 2 at 7.)

employees from liability so long as the claim arises from acts performed within the scope of their employment. IND. CODE § 34–13–3–3; *see also* Ball v. City of Indianapolis, 760 F.3d 636, 645 (7th Cir. 2014) ("Under the Indiana Tort Claims Act, there is no remedy against the individual employee so long as he was acting within the scope of his employment."). It is clear from the complaint that Mr. Northrup is complaining about actions Lieutenant Risner took in his role as a correctional officer. Mr. Northrup can't proceed on these claims.

Mr. Northrup also asserts disability discrimination claims under the Americans with Disabilities Act, 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 701. He says he has had difficulty accessing a number of prison programs and services due to problems he has writing as a result of his shoulder injury. He claims that he tried to seek help from the prison's ADA coordinator and has sought reasonable accommodations so that he can participate in these programs and services, but to no avail. These claims, and the facts underlying them, aren't sufficiently related to his medical care claims to proceed in the same lawsuit. *See* Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). It would be particularly inappropriate to try to litigate these discrete claims together given that Mr. Northrup claims to have a pressing medical issue that needs to be addressed promptly. Therefore, the ADA and Rehabilitation Act claims will be dismissed without prejudice to Mr. Northrup asserting them in a separate lawsuit, should he choose to do so. The court offers no opinion about the merit of any potential disability discrimination claim he may have.

Mr. Northrup separately moves for preliminary injunctive relief. (ECF 6.) He seeks an order requiring that he be provided additional medical care while this case is pending, including but not limited to "shoulder surgery" and appropriate "follow-up care." (*Id.*) "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). As to the first prong, "the applicant need not show that [he] definitely will win the case," Illinois Republican Party v. Pritzker, 973 F.3d 760, 763 (7th Cir. 2020), but "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). As to the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, 555 U.S. at 22.

"Mandatory preliminary injunctions" requiring the defendant to take affirmative acts, as Mr. Northrup requests here, are "cautiously viewed and sparingly issued[.]" Mays v. Dart, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted). A court's ability to grant injunctive relief in the prison context is significantly

11

circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." Westefer v. Neal, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted). Accordingly, the court will order the warden to respond to the request for a preliminary injunction before taking further action.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Iva Nerada, Josh Kuiper, Brandon Siminski, Nurse Deal (first name unknown), Dr. James Jackson, and Dr. Andrew Liaw in their personal capacities for monetary damages for failing to provide him adequate medical care for his shoulder in violation of the Eighth Amendment;

(2) GRANTS the plaintiff leave to proceed against Warden John Galipeau in his official capacity for injunctive relief related to his ongoing need for constitutionally adequate medical care for his shoulder;

(3) GRANTS the plaintiff leave to proceed on an Eighth Amendment claim for monetary damages against Wexford of Indiana, LLC, and its parent company Wexford Heath Sources, Inc., for maintaining an official policy or custom of failing to adequately train and monitor medical staff and inmate workers in the Westville infirmary to ensure that they remain within "the sight and sound of every inmate patient," resulting in the plaintiff falling and injuring himself in November and December 2020;

(4) DISMISSES WITHOUT PREJUDICE the plaintiff's unrelated claims under the Americans with Disabilities Act and Rehabilitation Act;

(5) DISMISSES all other claims;

(6) DISMISSES the Indiana Department of Correction, Robert Carter, Kenneth Watts, Dorothy Livers, Lieutenant Risner, and Michelle Rebac as defendants;

(7) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Iva Nerada, Josh Kuiper, Brandon Siminski, Nurse Deal (first name unknown), Dr. James Jackson, Dr. Andrew Liaw, Wexford of Indiana, LLC, and Wexford Health Sources, Inc., at Wexford of Indiana, LLC, and to send them a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(8) DIRECTS the clerk to request a Waiver of Service from the Westville Correctional Facility Warden by email to the Indiana Department of Correction with a copy of this order, the complaint, and the motion for preliminary injunction pursuant to 28 U.S.C. § 1915(d);

(9) DIRECTS the clerk to fax or email a copy of the same documents to the Warden at Westville Correctional Facility;

(10) DIRECTS the United States Marshals Service to **immediately** serve process by certified mail pursuant to 28 U.S.C. § 1915(d) on the Westville Correctional Facility Warden;

(11) ORDERS the Indiana Department of Correction and Wexford of Indiana, LLC, to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available;

(12) ORDERS the Warden of Westville Correctional Facility to file and serve a response to the motion for a preliminary injunction as soon as possible, but no later than **August 20, 2021**, with supporting medical documentation and declarations from staff as necessary, addressing the status of the plaintiff's medical condition, what medical evaluations and treatment he has received to date, and what future course of treatment, if any, has been prescribed; and

(13) ORDERS Warden John Galipeau, Iva Nerada, Josh Kuiper, Brandon Siminski, Nurse Deal (first name unknown), Dr. James Jackson, and Dr. Andrew Liaw to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on July 6, 2021

                                                  s/ Robert L. Miller, Jr.
                                                  JUDGE
                                                  UNITED STATES DISTRICT COURT